UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF THE COMPLAINT          )
OF AMERICAN RIVER TRANSPORTATION        )
COMPANY FOR EXONERATION FROM,           )         Case No. 4:11-CV-523 (CEJ)
OR LIMITATION OF, LIABILITY.            )
                                        )

## MEMORANDUM AND ORDER

This limitation of liability action is before the Court on the motion of the United States to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.P.

### I.  Background

Plaintiff American River Transportation Company is the owner of the towboat M/V Julie White and four barges.  On March 6, 2011, the M/V Julie White was towing the barges loaded with rock southbound on the Mississippi River.  According to the complaint, the barges separated from the towboat, allided with structures appurtenant to Lock and Dam 25, and sank.  Plaintiff was notified by the United States Army Corps of Engineers that the lock and dam structures sustained damage and received a written claim for unspecified damages.  Plaintiff denies that it was at fault in causing any damage, and alleges that the incident was caused either by the Corps of Engineers or by other persons or conditions for which plaintiff was not responsible.

In this action, plaintiff seeks an order enjoining the prosecution of any claims against it and an adjudication that it is not liable for any damages resulting from the incident.  Alternatively, plaintiff asks that any determination of its liability be limited to the total value of the M/V Julia White, the barges in tow, and the pending freight,

which plaintiff alleges is $1,322,837.85.[1]  In accordance with the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.*, the Court granted plaintiff's *ex parte* motion for an order restraining legal proceedings against plaintiff and the M/V Julie White, and directed all persons with claims arising from the incident to file such claims no later than June 15, 2011.

## II.   Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint.  The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals  based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim.  Id.  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp., 550 U.S. at 570.  See also id. at 563 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement.")  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 555.

---

[1] Plaintiff alleges that the M/V Julie White has a value of no more than $1,270,000; the cost of salvaging the barges will exceed their value once raised; and the pending freight has a value of no more than $52,837.85.

## III. Discussion

The government's motion to dismiss plaintiff's complaint for limitation of liability requires the Court to consider the interplay between the Limitation of Shipowners' Liability Act of 1851, 46 U.S.C. § 30505 (the Limitation Act), and the portions of the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 401 *et seq.*, pertaining to liability for damage to navigational works built by the government. At issue here is whether, under 33 U.S.C. § 408, the government can recover damages from plaintiff in an *in personam* action or whether the government is limited to an *in rem* remedy against the vessel.

The Limitation Act provides, in relevant part:

> (a) In general. -- [T]he liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight. . .
>
> (b) Claims subject to limitation. -- Unless otherwise excluded by law, claims, debts, and liabilities subject to limitation under subsection (a) are those arising from . . . any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner.

46 U.S.C. § 30505.

The government wishes to preserve its right to bring a claim against plaintiff under section 14 of the Rivers and Harbors Act, 33 U.S.C. § 408, which provides:

> It shall not be lawful for any person . . . to . . . injure . . . or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States, . . . for the preservation and improvement of any of its navigable waters.

33 U.S.C. § 408.

The following provisions of the Rivers and Harbors Act are also relevant:

> Any and every . . . person . . . who shall willfully injure or destroy any work of the United States contemplated in section 408 of this title, or who shall willfully obstruct the channel of any waterway in the manner contemplated in section

> 409 of this title, shall be deemed guilty of a violation of this Act, and shall upon conviction be punished as provided in section 411 of this title . . .  And any . . . vessel . . . used or employed in violating any of the provisions of sections 407, 408, 409, 414, and 415 of this title shall be liable for the pecuniary penalties specified in section 411 of this title, and in addition thereto for the amount of the damages done by said . . . vessel . . ., which latter sum shall be placed to the credit of the appropriation for the improvement of the harbor or waterway in which the damage occurred, and said . . . vessel . . . may be proceeded against summarily by way of libel in any district court of the United States having jurisdiction thereof.

33 U.S.C.A. § 412.

Section 411 specifies that any "person or corporation" who violates these provisions is guilty of a misdemeanor and is subject to a fine and/or imprisonment. Section 409[2] bars the obstruction of navigable waters and further provides that:

> whenever a vessel . . . is wrecked and sunk in a navigable channel, it shall be the duty of the owner, lessee, or operator of such sunken craft to immediately mark it with a buoy or beacon . . .; and it shall be the duty of the owner, lessee, or operator of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411 to 416, 418, and 502 of this title.

33 U.S.C. § 409.

In <u>Wyandotte Transp. Co. v. United States</u>, 389 U.S. 191 (1967), the United States Supreme Court addressed whether, under the Rivers and Harbors Act, the government could recover its costs for removing a negligently sunk vessel.  The vessel owners contended that the statutory language barred the government's claim.  The Supreme Court summarized the owners' argument as follows:

> [I]n the case of a negligently sunk vessel, the Government may require the owner to mark it; it may expect him to remove it or forfeit his interest in the

---

[2] Section 409 is one of five sections of the Rivers and Harbors Act comprising the Wreck Act ( 33 U.S.C. §§ 409, 411, 412, 414, and 415),  and addresses the problem of obstructions caused by sunken vessels.  <u>University of Texas Med. Branch at Galveston v. United States</u>, 557 F.2d 438, 444 (5th Cir. 1977).

> vessel; and if the Government proceeds to remove the vessel, it possesses the right to sell vessel and cargo and retain the proceeds of these sales. Moreover, the Government may proceed criminally, under § 16 [§ 411], against those responsible for the negligent sinking. But, petitioners argue, the Government may do no more. Under their view, the very detail of the Rivers and Harbors Act negates the possibility that Congress intended the Government to be able to recover removal expenses exceeding the value of the vessel and its cargo.

Id. at 199-200 (footnotes omitted).

The Supreme Court disagreed. First, the Court noted, the government is a "principal beneficiary" of the Rivers and Harbors Act, which was intended to prevent obstruction in navigable waterways. Id. at 201. In addition, it is "the general rule that the United States may sue to protect its interests" by bringing a civil action, even where an act provides criminal penalties. Id. at 202. And, in the case of the Rivers and Harbors Act, the criminal penalties for violations of § 409 were clearly inadequate to reimburse the Government for its expenses in removing the wrecks. Furthermore, the Government may seek an order directing the vessel owner to rectify the wrong done to maritime commerce:

> Denial of such a remedy to the United States would permit the result, extraordinary in our jurisprudence, of a wrongdoer shifting responsibility for the consequences of his negligence onto his victim. It might in some cases permit the negligent party to benefit from commission of a criminal act. We do not believe that Congress intended to withhold from the Government a remedy that ensures the full effectiveness of the Act.

Id. at 204. Having determined that declaratory relief was available to the Government, "it is but a small step . . . to a civil action for the Government's expenses incurred in removing a negligently sunk vessel." Id. Additionally, the Supreme Court noted that the Limitation Act is available to vessel owners only if the damage occurred "without the privity or knowledge" of the owner. "The reading that petitioners would place on the Rivers and Harbors Act of 1899 would create an additional right of limitation, applicable in the special case of a sinking even though the owner is himself negligent."

-5-

Id. at 205. The court otherwise declined to address "the application of the Liability Act" to the case before it. Id. at n.17.

Other courts have subsequently determined that, "[i]n order to fully effectuate the policies of the Rivers and Harbors Act as interpreted in the Supreme Court in Wyandotte, . . . it is impossible to give full effect to the Limitation Act" in cases involving § 409 and wreck removal. University of Texas Med. Branch at Galveston v. United States, 557 F.2d 438, 451 (5th Cir. 1977). See also In re Chinese Maritime Trust, Ltd., 478 F.2d 1357 (2d Cir. 1973) (finding that Limitation Act did not apply to claim arising under § 409); In re Pacific Far East Line, Inc., 314 F. Supp. 1339, 1349-50 (D. Cal. 1970) (finding that "nothing in the Rivers and Harbors Act or any other statute of the United States known to the Court . . . restricts the liability created by 33 U.S.C. § 409 to wreck removals"). Thus, the Limitation Act does not apply to limit the government's recovery of its actual costs incurred in removing wrecks pursuant to § 409. In re Southern Scrap Material Co., LLC, 541 F.3d 584, 592 (5th Cir. 2008)

The widespread agreement regarding wreck removal does not extend to the question of the government's ability to bring claims under § 408 without running afoul of the Limitation Act. The two positions are set out in cases from the Sixth Circuit and the Fifth Circuit.

In Hines, Inc. v. United States, 551 F.2d 717 (6th Cir. 1977), two barges loaded with gasoline struck a lock and dam, caught fire and sank, causing extensive damage. Id. at 718. The owner filed a limitation action and received an order restraining any other actions. The district court subsequently relaxed the restraining order to permit the government to file an action for costs incurred both in removing the wrecks and repairing the damage to the lock and dam. In affirming, the Sixth Circuit first applied

Wyandotte to determine that the government had a right to *in personam* relief against the owner of vessel for its claims under § 409 for the costs of removing the wrecks.

With respect to the government's claims under § 408, the Sixth Circuit stated: "The legal logic which applies to the Wreck Act [§409] claims . . . could apply just as well to the government's claims . . . [for] damages occasioned to the lock and dam . . . brought under [§§ 408 and 412]." Id. at 724.  The Sixth Circuit determined that "the Congressional intent in adopting [section] 408 . . . did not contemplate application to the United States of the Limitation of Liability Act of 1851." Id. at 725.  The court first examined the statutory language of the Rivers and Harbors Act, noting that § 408 imposes strict liability while § 409 uses a negligence standard.  Id. at 724.  And, § 412 provides for the vessel's liability for damages caused by violations of § 408.  Finally, § 411 prescribes fines and imprisonment for violations of both § 408 and § 409.

The court then adopted the Seventh Circuit's rationale set forth in United States v. Ohio Valley Co., 510 F.2d 1184, 188 (7th Cir. 1975).

> [T]he purpose of the combined effect of [§§ 408 and 411] is to provide funds for the replacement and maintenance of improvements built by the United States.  This purpose is implemented through an absolute liability standard.  Thus, it would be wholly inconsistent to apply the limitation of liability provisions . . . to the absolute liability provisions of [§ 408] while at the same time not applying them to [§ 409] which speaks in terms of "voluntarily or carelessly" allowing a vessel to sink.  Furthermore, § 183(a) [of the limitation act, 46 U.S.C. § 30505] speaks in terms of lack of 'privity and knowledge.'" . . . Since the triggering mechanism for section 183(a) limitation of liability is tied to an awareness of negligence, and because negligence is not significant in actions under [§§ 408 and § 411], it follows that the limitation of liability provisions are inapplicable to those sections.

Id. (quoted in Hines at 727).

The court applied the general rule that "when the purposes of two statutes appear to be in conflict with each other, and there is no statutory language which makes any cross-reference, and, as here, the legislative history is silent as to the

possible conflict, it is generally assumed that the later statute constitutes an amendment of the earlier one." Id. at 725. The court found that applying the limitation act to restrict the United States' right to recovery would violate the liability language of § 408. Id. at 727. Finally, the Hines court noted that the "Limitation of Liability Act was passed long ago in 1851 for the conditions then existing, many of which changed materially before the Rivers and Harbors Act was adopted in 1899, and have changed even more materially since then." Id. at 728. The court concluded, "we do believe that there is no warrant in the facts of the present case for an expansive reading of the Limitation of Liability Act which would cripple the effectiveness of the important purposes of the Rivers and Harbors Act." Id.

The Fifth Circuit has reached the opposite conclusion. In In re Barnacle Marine Mgmt., Inc., 233 F.3d 865 (5th Cir. 2000), the court determined that the United States does not have an *in personam* remedy against the owner of a vessel that damaged a public work. The court declined to extend Wyandotte, which found that § 409 provided the government with an *in personam* remedy, to a cause of action under § 408, relying in differences in the plain language of the two statutes:

> Because § 408 does not give the United States the right to a declaratory order requiring the person responsible for damaging or impairing a public work to repair the work, Wyandotte's reasons for implying an *in personam* remedy under § 409 do not apply in this § 408 case. . . . We realize this decision declining to imply an *in personam* remedy under § 408 puts us in conflict with the Sixth Circuit's decision on Hines, Inc. . . .

Id. at 870. The Fifth Circuit concluded that § 408 provides only an *in rem* remedy against the vessel and thus, "whether the Limitation Act applie[d] ha[d] no practical effect." Id. at 867.

Plaintiff argues that the Eighth Circuit has been silent on the government's ability to recover damages under § 408 and that this Court should, therefore, adopt Barnacle

Marine as the better-reasoned case.  The United States argues that the Eighth Circuit has recognized that the government may bring *in personam* claims against the vessel owner.  The following is a brief review of  Eighth Circuit cases on claims under § 408.

In United States v. Federal Barge Lines, Inc., 573 F.2d 993 (8th Cir. 1978) (*en banc*), a barge sank upstream from a dam.  The barge was abandoned at the site, where it obstructed navigation and impaired the usefulness of the dam by causing turbulence that endangered vessels approaching the dam.  The United States brought suit under several provisions of the Rivers and Harbors Act, asserting *in rem* and *in personam* claims against the vessel and the owner and operator.  The district court dismissed the government's action, based on its interpretation that § 408 required the government to establish structural damage to, not merely impairment of the functioning of, the lock and dam.  The Eighth Circuit disagreed, stating that "section 408 should be interpreted broadly to cover the type of impairment" alleged by the government.  Id. at 997.  The decision of the district court was reversed and the case was remanded for a determination whether the sunken barge in fact impaired the usefulness of the dam.  The owner argued that § 408 did not provide an *in personam* remedy, but the Eighth Circuit declined to address the issue:  "We do not now decide whether in personam relief is available under section 408, but leave that question to the district court should the Government succeed in establishing its right to recover under section 408."  Id. at 998.

In United States v. Logan & Craig Charter Serv., Inc., 676 F.2d 1216 (8th Cir. 1982), the government brought suit against a vessel and its owner for damages incurred when the vessel allided with a 600-foot extension to a lock's guidewall.  The Army Corps of Engineers had created the extension by appending four barges to the

existing guidewall. Id. at 1217 n.1.  The district court entered judgment for the vessel and its owner based on a determination that the extension to the guidewall constituted an obstruction to navigation under § 403.  Id.  The Eighth Circuit disagreed, finding that the extension was a protected work under § 408.  Id. at 1219.  The vessel and its owner were deemed liable under § 408 because "[i]t is well recognized that private parties are strictly liable for damage to works protected under section 408."  Id.  The case was remanded for a determination of damages.  The question of whether § 408 provided an *in personam* cause of action was not raised.

In United States v. American Comm. Barge Line Co., 988 F.2d 860 (8th Cir. 1993), the government brought suit against the owner of a vessel under § 408.  The government sought to recover the cost incurred in replacing a gate that was damaged when the vessel went through a lock and dam.  The district court found that the gate had not required immediate removal and repair and thus awarded the government a proportionate share of the total cost.  The Eighth Circuit affirmed the district court's apportionment.  Questions regarding *in personam* liability or application of the limitation act were never addressed.

The Court agrees with plaintiff that the Eighth Circuit has not squarely addressed the availability under § 408 of *in personam* relief against the owners or operators of vessels alleged to have damaged public works.  Nonetheless, the circuit court acknowledged the issue in 1978 and subsequently has declined to address it while allowing *in personam* claims to go forward.  Adopting the Fifth Circuit's reasoning, as plaintiff urges, would cast doubt on the outcomes in the cases decided after 1978.

Furthermore, it is apparent that the Rivers and Harbors Act and the Limitation Act have different purposes.  See Wyandotte, 389 U.S. at 201 (the Rivers and Harbors

-10-

Act is an exercise of the government's power to regulate commerce and "was clearly intended to prevent obstructions in the Nation's waterways"); University of Texas, 557 F.2d at 455 ("the stated purpose of the Limitation Act was to place this country's mercantile marine upon the same footing as that of Great Britain) (quotation omitted); see also id. at 441 (the Rivers and Harbors Act and the Limitation Act are "two desultory streams of nineteenth century thought," which present the "unenviable task of deciding whether an impossibly obscure law [the Rivers and Harbors Act] prevails over a hopelessly anachronistic one (the Limitation Act)." The Court will apply the general assumption "that the later statute constitutes an amendment of the ealier one." Hines, 551 F.2d at 725.

The Court thus declines to adopt the reasoning of Barnacle Marine and holds that the United States may bring an *in personam* action against American River and, further, that such action is not subject to the Limitation of Liability Act. The Court similarly rejects plaintiff's contention that any claim the United States might have pursuant to § 408 or § 409 is barred by its failure to file those claims in this action within the time frame established by Rule F of the Supplemental Rules for admiralty claims. See United States v. Central Soya, Inc., 697 F.2d 165 (7th Cir. 1982) (holding that three-year statute of limitations, 28 U.S.C. § 2415(b), applies to government's claims under §§ 408 and 412).

In summary, the government has established that it is entitled to maintain an *in personam* action for damages against plaintiff for damages arising from the allision of the M/V Julie White and its tow of barges with Lock and Dam 25. The complaint will, therefore, be dismissed with respect to the United States. Because no other parties

have filed claims in this matter and the time for doing so has elapsed, the case will be closed.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of the United States to dismiss for failure to state a claim [Doc. #6] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 12th day of March, 2012.